We will continue through. We'll call our next case. 24-1341 United States v. Jackson. All right. Looks like we've got our lawyers. All right. Ms. Carter, you can proceed when you're ready, please. Thank you. Just checking you guys can hear me okay? We can hear you great. Great. Thank you. Good morning and may it please the court. I'm Elena Carter from the Federal Public Defender's Office and I represent Caleb Sean Jackson. The question presented here is whether officers properly executed a search warrant when they stopped and searched Mr. Jackson a mile and a half from the authorized premises. The answer to that question is no. Attachment A describes a location to be searched. That's in the header. The first two sentences then describe the subject location consists of the subject residence, surrounding property, and all outbuildings and vehicles located thereon, and to include the person of Caleb Sean Jackson at the time of search warrant execution. It's all describing a location, which includes Mr. Jackson when the warrant is being executed there. Not anywhere he happens to be, not anywhere in the district. Because Officer Newman clearly exceeded the warrant scope, you should reverse. Ms. Carter, can I ask maybe a more threshold question, which is I'm trying to understand what it is that officers did in terms of conducting a search of Mr. Jackson because I don't read your brief to contest that they could make the traffic stop, which is in effect a seizure that occurred at that point. But you're arguing that they can't search him though because he has to be at the Rob Road location. But did they search him? Because as I see the video, once they stop, they just have a discussion with him, and he essentially just hands over his phone. So help me understand what actions they took during that traffic stop that in any way could offend the Fourth Amendment. So we are challenging that they couldn't have stopped him at that moment, that that was not authorized pursuant to the warrant. Sorry, I'm hearing a little bit of echoing on my end. Sounds okay. You can keep going. Okay. Okay. And I think that stop is framed. And to quote from the government's answer brief, that stop is framed by Officer Newman's misleading statements about the scope of the search. So I don't think, I guess I'm jumping ahead to inevitable discovery here. I don't think he voluntarily would have handed over the phone if Officer Newman hadn't misrepresented the scope of the search by saying, I believe, the very first thing he said was, we have a warrant to search your residence and you and all your electronics and your car. But we are challenging that the stop itself was not authorized via that warrant. So your argument is, as they observe Mr. Jackson drive past them, that because he's not on the Rob Rowe premises, that they could not lawfully even stop him at all at that point. Correct. And did you make that argument in your brief? I'm sorry. Finish your response. I don't know that it explicitly came up in the briefing. I believe that but we have said that the various warrant exceptions that the government has raised are too speculative. And I don't think probable cause is the end of the analysis as it relates to inevitable discovery. So I guess I'm getting at, well, we're not assuming without conceding that there was probable cause to stop Mr. Jackson at the moment that he's driving by. I don't think you still get to the phone under those scenarios because of how Officer Newman's statements color the entire interactions. They have probable cause, not pursuant to the power given in the warrant, but pursuant to the information that was accepted by the magistrate signing the warrant. Didn't they have sufficient cause to stop him? Because there was probable cause that he committed a crime and that he had evidence of the crime on him. Sorry, Your Honor. So to answer your question, assuming without conceding that there was probable cause to stop him at that moment, and I don't think there was, but even if there was, the government hasn't raised under inevitable discovery probable cause plus search incident to arrest. And that's for good reason because- They did reference as a part of their argument on inevitable discovery that Terry stopped, didn't they? Yes, but again, you could have reasonable suspicion to pull him over, but it's far too speculative to say he would have consented to the search and voluntarily handed his phone over when again the first thing that Officer Newman said to Mr. Jackson was, we've got a search warrant to search your place today as well as your car for all of your electronics. So I don't think he would have handed over the phone in that scenario. That's far too speculative to get to Do we, Anna, when we think about inevitable discovery, aren't we very careful to not think about sort of speculative conduct by third parties? We're looking at the act of the government, right? Yes, you're correct, Your Honor. We want to look at what if the government has met this burden by preponderance that the evidence in question would have been discovered in the absence of the Fourth Amendment violation. And here, if you take away that Fourth Amendment violation, the improper execution, well, if the warrant had been properly executed at Mr. Jackson's residence at that time, he wouldn't have been there. And I don't think that the automobile exception, the Terry stop for reasons I've just gone into would inevitably get them the phone. It's far too speculative to say that the stop would have occurred just as it did with when you have that clear statement by Officer Newman. We've got a search warrant to search you, your phone, your car. Let me redirect you back to the beginning of your argument because we've started talking now about exceptions. As I understand, your principal argument is the warrant is valid but improperly executed, right? Correct, yes. And the last sentence of Attachment A says, and to include the person of Mr. Jackson at the time of the search warrant execution. And your position is that we should read that as limited to the premises, right? Correct. Is there a equally fair reading that it is not limited to the premises, rather it is limited to the time that the warrant is being executed? No, there's not. And I would address, first of all, the government's argument about the placement of two serial commas. One that ends the list, all outbuildings and vehicles, and then one comma, and to include the person of Caleb Shawn Jackson. But the commas merely organize elements within a definition of location to be searched. I'm struggling a little bit with why we're talking so much about commas, both our position, and I'll also ask Mr. Guil about it, government's position. Because our case law says that we have to look at this in a very practical way, that we're not doing statutory construction on warrant language, right? Yes. So my question is, leaving aside for a minute, sort of a more technical, grammar-focused approach, why isn't it an equally reasonable reading of the warrant that the person of Mr. Jackson is included here at the time of the search warrant's execution? That it's not premises-driven, it's temporally driven. I think that's because the header says description of location to be searched, then the three sentences in that paragraph below that description are working together to define the location with increasing specificity, and then the final sentence, location consists of, and to include Mr. Jackson, that clearly pulls him into the location, and to pull him out of location just based on the placement of two commas, I agree you don't have to get into the commas, I think it's a stretch to say the mere placement of two commas pulls him out of that location, when attachment A is wholly aimed at defining what property and people are components of that location, so it's a strained and hyper-technical reading to pull him out of that location. If we, I guess I want to ask you a question about the role of ambiguity, how we should be thinking about the role of ambiguity in this case. If the warrant here is, attachment A is susceptible to equally reasonable readings, and we conclude that the practical reading of the scope here could be clear, it's ambiguous, how should we be thinking about that, and specifically does that inform how we should be thinking about the good faith exception? So the Tenth Circuit has repeatedly said that good faith doesn't apply to save an improperly executed warrant full stop, and I think Leon itself doesn't leave an opening to expand the doctrine such that ambiguity triggers good faith to save improper execution of a valid warrant, because it's very clear in Leon that good faith of course assumes proper execution, i.e. that's a prerequisite here, so I think full stop you, the ambiguity, if you decide that our reading is correct, that execution here was improper, you don't do that second step of analysis of good faith as a means to save the improperly executed valid warrant here, and I would also point you to the Young case, which would be an example of a generally ambiguous language as to scope, but where the court nevertheless did not see an opening to expand the doctrine in the way the government is asking you to do, and the holding and the court held in that case. Is Young the unpublished case? Yes, it's unpublished, but I do think it's persuasive as a case where there was generally ambiguous language, unlike in our case where we think there was no ambiguity here, but Young is persuasive in that the court ultimately said because the validity of the warrant is not challenged, and we've concluded that the warrant did not authorize a search of the defendant's person apart, untethered from location, we also conclude good faith did not apply, so I think that's a clear statement that the validity of the warrant is challenging the validity of the warrant is one of those prerequisites to apply in good faith, so I don't think there's an opening here to expand the doctrine in this way. But if we find ambiguity in the warrant, do you lose on good faith? No, if you find ambiguity in the warrant, but ultimately find that we're right, we don't lose, you don't go to that second step of analysis. I think regardless of how you decide whether in our favor or for the government as to execution, you don't need to go to that second level of analysis here. Regarding ambiguity, I mean the target of this investigation or the purpose is to try to uncover evidence of child pornography offenses, and they're looking for electronic devices. The only reasons to search his person are one is for safety, but also for his cell phone because evidence of child pornography on his person would almost exclusively be the cell phone. So when we think about what the warrant is authorizing in terms of searching his person, why wouldn't a practical reading be, well, you can try to find his phone on his person, you have to do it at the time you're doing the search altogether, but it doesn't matter if he's on the Rob Road property or not. Well, I think Officer Newman's intent or strategic reasons for writing the warrant one way or another are irrelevant because I think the plain reading of this warrant is that you can only search him in connection with those premises. And I think the affidavit clarifies our position in that it's very location focused and it only describes Mr. Jackson in connection with executing the actual search warrant. It only describes him instrumentally as using his biometrics to open devices that are found at the quote subject premises. So I think we look at the four corners of the warrant here and I can't speak to Officer Newman's intent or strategy between writing the warrant one way or the other, but I do think the language is unambiguous that you can only search Mr. Jackson when he's at or in the immediate vicinity of the subject premises. And I would like to reserve the final time for rebuttal unless there's a question. Wait a minute before you reserve. It would be inappropriate for us to look at the government's inevitable discovery argument realizing the facts are basically undisputed here and look at it and that the warrant gives them a basis to make a Terry stop and that they can do the search pursuant to the Terry stop, which is the front. And the only problem here is that the government characterized this approach, because their approach was premised on Terry as inevitable discovery, is that they just put the wrong label on it. Is there anything wrong with us pursuing it in that fashion, saying it was a Terry stop, a proper search pursuant to Terry stop? And what's the problem? Why couldn't we do that? I disagree that the Terry stop would have inevitably led to getting the phone, first of all, but also I would add that the Tenth Circuit has never applied inevitable discovery to save an improperly executed warrant. You missed my point. Are we permitted? I'm saying, I think the government mislabeled the theory. It's not an inevitable discovery because there was no 14th Amendment violation because the stop, I think, looks like it's okay under Terry, so there's no 14th Amendment. There's no inevitable discovery because that requires a 14th Amendment violation to precede it. So why can't we just go on from there and say it was a Terry stop and the phone was there and they could search it? What's wrong with that? Well, I don't think the Terry stop would have inevitably led to getting the phone because that would assume that Officer Jackson would, I mean, excuse me, Mr. Jackson would have still handed the phone over to Officer Newman again. Well, no, it's a Terry stop. They have to make sure that he can't get away with anything that destroyed everything and he's got this phone. You can't just let him have the phone if you have a proper Terry stop. You have to take the evidence that he has. Well, basically what I'm asking is, is there anything unfair with us recharacterizing the argument that the government makes from inevitable discovery to a Terry stop and its natural consequences of a roadside search? Is there anything wrong with that? Is it unfair to do that? I'm not sure how to answer that, Your Honor, candidly, because that wasn't something that came up in the briefing, so I don't want to... Well, I think that answers it. I mean, the government called this an inevitable discovery exception, so that's what they're hearing. Well, you would agree that the facts are undisputed, wouldn't you, Ms. Carter? Yes, I believe it's just legal arguments here. The only factual argument that was disputed below was whether the phone was on his person and under his control at that point in time of this stuff, but I don't think either side is challenging that on appeal. Thank you, Ms. Carter. We'll hear from the government. May it please the court, Bishop Bruwell on behalf of the United States. Given the conversation that's occurred so far, I think I'll probably start briefly with what we've called inevitable discovery, and then I'll address Judge Rossman's questions about what to do with the ambiguity here. I think there are two different ways that the ambiguity could be approached if this court considers there to be an ambiguity in the warrant. As far as the inevitable discovery, I suppose it could have also been labeled independent source. I don't think there's any speculation required with regard to this. The officers could stop him because not only did they have reasonable suspicion, they had probable cause that he had committed a crime and was committing the ongoing crime of possessing illegal child pornography based on everything that's in the affidavit. They knew the vehicle he was driving was him and had a personalized plate you can see in the video that was referenced in the affidavit. We had all of this stuff in the affidavit about how people who have contraband keep it on their phones and on digital devices that are on their person, and so once they could stop him, then whether it's a search or not, the automobile exception would have, even if he hadn't handed over the phone, the only reason that they could stop him is as they were invalidly executing the warrant, right? I don't think that's correct, Your Honor. I think they could have stopped him to arrest him. They had PC that he was committing an ongoing offense at that point, so I think they could have stopped him even without the warrant based on that information they had that's in the affidavit. And then the only thing that... But what if the warrant had been invalid? Here the warrant's valid and the argument is it was improperly executed, so does your argument depend on there being a valid warrant? Well, if the warrant was invalid because of a lack of probable cause, that could be a problem because we're basing sort of the PC here on the fact, the PC for the stop and the PC to search the car based on the stuff that's in the affidavit, but I don't think an invalid warrant based on the going outside the scope would create a problem with those things because I think there are independent ways, again, we could have stopped and searched the vehicle and then the officer testified on the stand, if this warrant that I had didn't cover the phone, I would have gotten a warrant to search the phone and so I don't think there's any of the speculation required to go to answer that particular exception. So really the reliance is not on the warrant but on the basis that the warrant was acquired, i.e., the application, and the application has sworn testimony that we know what this guy has done, we know how he has done it, and we have him on the roadside and we have access to the phone which is one of the instruments of the crime that's mentioned in the application, correct? Correct, correct, and they haven't challenged that and possession of child pornography is an ongoing offense, it's a continuing offense, so every moment it's a crime that is ongoing. Okay, but okay, here's the problem I'm having with that, I think that makes perfect sense, but we got, it's asymmetrical the way the approach is because you say it's inevitable discovery and I just don't see that because if the Terry stop was appropriate there was no preceding 14th amendment violation which is the standard traditional part of an inevitable discovery theory, isn't that correct? Which I think these often get sort of mixed up, I think that's why it could be an independent source better than inevitable discovery, that might be the better label for it. But you didn't even say that, all you said was inevitable discovery, you didn't say independent source, you didn't say forget the warrant, you know, we can just stop this guy and take his phone. We didn't put that label on it but we did put all the necessary facts and all the necessary exceptions that would, we said this is why you could stop him because there's reasonable, well, there's probable cause which would give you reasonable suspicion, we pointed out that you could then search based on the automobile exception, we then point out that he testified that he would have gotten a warrant, so it is correct we didn't put that label on it but all of the facts underlying that theory are there in the briefing. Here is something, this is more in with your inevitable discovery label, eventually the warrant was executed at the site, wasn't it? It was. Okay, and is it in the record what it was that you found at the site as distinguished from what you found on his person when you did the roadside stop, is that clear from the record? As I recall there were not devices that they found at the site, it was on his phone that the evidence that, which is why this matters in this case because that is where the evidence was found through the search of his phone. Because if there were other things on the drive in addition to phone, that would fit inevitable discovery a lot better, wouldn't it? It would, I think the one inevitable discovery point that's still here though is we did need the testimony that, look, once I had that phone, if it was not going to be covered by this particular warrant, I would have went and got another warrant and so that is an inevitable discovery fact. We have all these other facts that are leading up to that chain but that particular thing is something that didn't happen as an independent source. But that just sounds just wrong to say that I improperly executed a warrant and in improperly executing it, I found this information and so that would have led me to get a second warrant. That sounds awful to me. I think where the basis is, we have all this independent source that would have got us there to get this other warrant which would be legitimate and nothing is illegitimate in that chain. It makes sense when we're talking about the concerns about deterrence on the exclusionary rule. But doesn't a second warrant depend on the propriety of your doing the search and everything at the roadside? That is correct. Yeah, but again, I don't think it's a PC problem. I think it's a scope of that warrant problem. So I don't think that's, it doesn't create a propriety problem in how the stop occurred or the search that occurred. I'd like to, if I may, turn to the questions about the ambiguity in the warrant unless the court has further questions on inevitable discovery. I did have one quick question on inevitable discovery. I just want to make sure that I understand exactly what the government argued. So your two arguments or your two theories in support of inevitable discovery was one, you stopped him to provide him a copy of the warrant. That seems strange. Do you stand by that argument? Yeah, I'm not pressing that argument. Okay, you're not pressing that argument. Makes sense. The second is this Terry idea. And I think I want to just make sure I understand what you presented because I think in your questioning with Judge Murphy, the facts are undisputed. The facts are what they are. And if we create, break the causal chain and this is just an ordinary traffic stop, is there a reasonable suspicion for this ordinary traffic stop that that's a different kind of an inquiry? You did not make that argument, right? Your Terry stop argument, or actually, let me stop talking and have you talk. Tell me what the government's argument is under Terry as part of your inevitable discovery theory. Yeah, I think our alternative argument and is, I think it might be the Monteith case decision we cite. I can't remember which one is, but that basically the fact that there was PC that he is committing an ongoing crime gives you at the very least reasonable suspicion. But you had PC, which is a higher standard. You could arrest him for that. You could stop him for that. The fact that he was committing an ongoing crime of possessing child pornography. That's the basis for the stop. And then once you've stopped him, because you have PC that it's evidence of that crime or contraband is on his device, under the automobile exception, you could get that that device. OK, thank you. Turning the ambiguity question, I think there are two ways, assuming that the warrant here is ambiguous. I think there are two ways that the court could address this either. And these are both, in some sense, based on the footnote 19 language from Leon, where I think it suggests that as long as the officers are searching a place that they, quote, have reason to believe, end quote, is covered by the warrant, that that's not the sort of thing that we're worried about here. So the first way that the court could address that is it could say, if you have an if you if officers are acting with reason to believe that something is within the scope of the warrant, we don't have a scope violation. We're not going to go to good faith. We're just going to say scope violations require officers to be acting unreasonably. Sorry. There's an epithet. Unreasonable support. Requires the officers to be acting unreasonably and there's simply no scope violation in this situation. Hold on a second. So in that version of that argument, we would have to agree that the facts here support that this warrant was being executed reasonably when Mr. Jackson was stopped. Is that right? That the officers had reason to believe that searching him off press off premises was within the scope of the warrant. OK. And that's the language from Leon footnote 19, that they had reason to believe. The second way that the court could address it is by saying that good faith applies here and that, in fact, while there's much dicta in the 10th Circuit, there's no holding that good faith doesn't apply to scope and execution, which I think is what the First Circuit says in its Pimentel decision in footnote four. It discusses this court's precedence and says that the question of ambiguity regarding scope has not come up in Angelos or those decisions. And so the 10th Circuit hasn't actually reached that question. And then based off of footnote 19 in Leon, that where officers have reason to believe, which they would in an ambiguity, that this is within the scope of the warrant, good faith would apply. Well, let me ask you this. I mean, your friend on the other side here says that it's a full stop situation in terms of what our law shows it. Leon, good faith will not save an improperly executed warrant, period. You agree that that is a correct, at least descriptively, the state of our law, right? I agree that the court has said things like that, but never held that, that there's been no decision where an ambiguity has been in all of those cases and ambiguity was never an issue. So I don't agree. So we have held that. But your position is that because those cases were not adjudicating the sort of ambiguity argument you're pressing here, that is open in this circuit. Is that your position? I think for it to be a holding, the issue has to be present in the case and it has to be something that's required to make the decision. And I think that's why the 1st Circuit in its footnote 4 says this court hasn't decided it. Even though you say what we've said, that Leon cannot save a faulty execution, even if you say that's dicta, doesn't that concept naturally flow from what Leon is all about? And that is that you have a faulty warrant on its face for some reason, but in good faith looking at it, you couldn't really tell that versus some problem when you take this warrant and you execute it in an improper fashion. That seems to me on a completely different track than the whole theory of Leon. I don't think it calls for a per se rule. I think that makes sense if you have an unambiguous warrant that what they did was unambiguously outside the scope, which is the cases this court has decided. I think when you have Leon footnote 19 saying, but if officers are acting based on a reason to believe that something's within the scope of a warrant, when something's ambiguous, I think they have reason to believe that it's within the scope of that warrant. And you're not getting to sort of any of the deterrence value that Leon is about. You don't have officers who are intentionally trying to play a game here. In fact, it's quite clear the officers based on everything that's in the affidavit could have gotten the clear language. There's no concern that somehow the magistrate wouldn't have approved it if they had added on to say and Caleb Jackson, no matter wherever he may be or whatever time that that wouldn't have been approved. And so I don't think the deterrence concerns that Leon has are there. And I think Leon says again, in footnote 19, it's where officers have reason to believe something's within the scope of the warrant. We're not concerned about that. It's also if the court, if this court's going to go the other way, I think it, I think it should acknowledge it is certainly creating a circuit split with the first circuit in Pimentel. Pimentel said exactly the opposite. The Young case that they cite, it's unpublished and it doesn't, with due respect, doesn't say what it's been presented to say. There wasn't an ambiguity in Young. Rather in Young, this court said the clear command of the warrant was that they could only search the apartment, not the person. So the ambiguity wasn't an issue in Young, even if it had been a published decision. Help me and if you can do it in 10 words or less, I appreciate it, but you may need more than 10 words. What is ambiguous in Attachment A that say that you can include the search of the person at the time of the search warrant execution and that's at the place? How is that ambiguous? I don't, I don't get it. I think when you have the language before saying located thereon, that indicates there's a geographic limiter. We don't have it at the end. Perhaps if the person had been before that, a natural reading might include that, but he's certainly not a subcategory of those things that are listed, the buildings and the like. And the timing limitation is simply saying it's not an order of operations. It's simply saying this all needs to be part of the same temporal episode. So like you can't wait three days between searching the premises and him, but it's not saying you can only search him if he's on the premises at the time. What is more, what is more instructive for a practical reading, which is what our case law demands. The sort of, you know, commas and clauses and technical language or literally the heading description of location to be searched. Yeah. So I think location is ambiguous here. That's the problem because it doesn't just use a place. It has places, things, and people. And so it's not using location in the sense of a place when you have things and people included. That's why for the things here, the cars and the outbuildings, it needed to say that they're located thereon. And so I think that's not the pragmatic reading when you have that other context. Do you know if in Pimentel, do you know if the first circuits law, you're suggesting that we would be creating a split here, you know, is sort of the first premise in the first circuit about Leon doesn't apply to improper execution. They hold that too, right? I mean, there's no circuit split on the on the black letter descriptive principle, right? No, they say that it is not a per se rule, that in fact, good faith can apply to a search warrant that goes outside the scope and execution. They say that, I think, quite clearly at several pages, it's pages 90 through 92. And there the going outside the scope execution was actually much more egregious than here because that one, the warrant said, you can search on the second floor of this three story building, because that's where the residence of this guy is. Turns out they get there and they realize his residence is on the third floor and they go search the third floor, which is clearly outside the warrant on that. But they decided that was ambiguous enough. This is this is far more ambiguous than that language, which was upheld under the good faith doctrine in Pimentel. May I ask one more question, counsel, the ambiguity in the warrant language. I think I hear you saying it's not ambiguous that you can search Mr. Jackson at the same time that you're executing the search at Rob Road. But it may be some ambiguity as to whether or not Mr. Jackson has to be on the property itself when you execute that search of him, if I hear that correctly. But if that's true, you didn't execute the warrant or search Mr. Jackson at the time you were at Rob Road because the officers never were at Rob Road yet. And you say in your brief, well, we were already executing the warrant when we stopped him. But what authority do you have for that? So it's two things. We have the officer's testimony that really this stopping from the site was the beginning of the execution. We have the warrant that says the execution included providing a copy of the warrant when they stop him. And the third thing, then, is, as I was trying to say earlier, this isn't an order of operations. It doesn't say you have to start searching the outbuildings and the vehicles first. He's an independent thing. It all just has to be part of this same episode. And it clearly was. It wasn't too attenuated. They stop him, do that search, and then they immediately go to the property. So it's not like they waited three days. It was all part of the same episode. It basically creates a temporal nexus that was met here. Did they take Mr. Jackson with them from the roadside stop to the premises? He asked to go with them. Okay. You use the word staging. Is that the same thing as executing? I think that's a factual question actually here. I haven't seen it live, but that was the testimony of the officer that we have the site in the brief where he said this is sort of where we're starting the executing is them setting it up. And so I think that's arguably a factual finding in the record. Thank you, counsel. Well, we kept the government an extra four minutes. Ms. Carter, put some time back on your clock. Give you four minutes. Thank you. I appreciate that, Your Honor. There's a number of things I'd like to have a chance to address. First of all, with Pimentel, I think it's inapplicable here because in the 10th Circuit, these types of address errors wouldn't serve to invalidate a warrant. And I would point you to Harmon versus Pollitt for that proposition that a technically wrong address does not invalidate a warrant if it otherwise describes the premises with sufficient evidence. And I think that's particularly so. That's one thing I would note there as to that first circuit case. Since the footnote in Leon came up, I'd like to address that for a moment. Footnote 19 is simply describing the standard for evaluating whether an execution is proper. I don't think it creates an opening to expand the doctrine. And I also want to address the government's argument about the temporal work that, or the temporal restriction here. And I would like to point out that their argument as to how to interpret at the time of search warrant execution is completely circular and meaningless. Whereas our reading, the meaningful work that phrase is doing is clarifies that Mr. Jackson can only be searched inside the active execution period. But their reading at the time of search warrant execution is completely elastic in that officers can simply hand someone a copy of the warrant anywhere at any time and claim they're executing it. We can search Mr. Jackson because warrant execution has begun. Warrant execution begins because we hand him the warrant or handing him the warrant because we're searching him. I think that just can't be. As to another point, the idea of vehicles- they're saying they testified that the warrant execution begins once we stop him because we can serve the warrant upon him. And for other reasons, we can stop him. But then they immediately go to Rob Road in which he, I think, drives himself there to join them. So I heard the government saying, well, there's a temporal proximity to the manner in which it was executed. We don't have to sort of think about the hypotheticals as to whether they could have stopped him and then the next day gone back to Rob Road. Well, I wouldn't agree that the execution would begin that far out. I think even if- I think the execution, you still have to execute the warrant properly at the designated location. And I would also like to, in my remaining time, address the point about the located thereon language. And the warrant already includes site-specific limiting language that ties Mr. Jackson to the location. So you don't- that's clearly the header. This location consists of and to include Mr. Jackson, which is clearly additive language. So you don't need to repeat located thereon next to his name. So the absence of that, I think, doesn't go either way. And even if you took located thereon away from modifying vehicles, I think it's still clear we're talking about vehicles on the property. So I do want to address that point. And I also finally want to say this isn't a matter of a quick fix, like in Street, a case that you all are probably aware of where you could just quickly tweak some of the writing in the warrant. Because in Street, we had a warrant that was invalid from its inception, but it was essentially signing off, though, on the same exact search. Here, it's not much of a quick fix because we're asking for a totally different, broader search here that the magistrate would have to consider. So with that, I will rest on our briefing and ask you to reverse. Thank you. Thank you, counsel. Thank you both for your great briefs and helpful arguments. Case will be submitted.